FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 23, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DANIELA Z.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 1:26-cv-3041-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS**

Plaintiff Daniela Z. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 benefits. Although the record reflects that Plaintiff's impairments limit her physically and mentally,

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

the ALJ's residual functional capacity sufficiently accounts for these limitations, and substantial evidence supports the ALJ's nondisability finding. The ALJ's decision is affirmed.

## I. Background

In May 2023, Plaintiff filed a Title 2 application for benefits, alleging disability beginning July 1, 2020, when she was 48-years-old, due to impairments impacting her feet, back, neck, pelvis, thyroid, heart, lungs, intestines, uterus, liver, and stomach.[2]

In March 2025, Plaintiff appeared for a telephonic hearing before ALJ Mark Triplett, during which Plaintiff and a vocational expert testified.[3] Plaintiff, who lived with her husband and adult daughter, testified that she has difficulty controlling her stool, has difficulty with stop-and-go driving because of back pain and her pelvis, has to hold on to the counter when she washes dishes, has difficulties bending her knees, has difficulties getting into the bathtub, has a pinched nerve in her back due to a bulging disc that causes issues with her right foot

---

[2] Administrative Record (AR) 19, 207–22, 285.

[3] AR 38–81.

and as a result can only stand or walk for 5–20 minutes or about 150 yards, struggles with dizziness on walks, and on her worst days she must lay in bed.[4] Plaintiff stated that she experiences panic attacks and anxiety, which impact her sleep.[5] This testimony supplemented her Function Report in which she stated that her pelvis gets "stuck" making it difficult to sit, stand, or lay down; that she has "great pain" from her degenerative disc disease; and that she has a limited ability to stand due to pain, experiences shortness of breath, takes extra time to perform chores, cannot lift more than 10 pounds, cannot bend or use stairs, and has urinary and fecal incontinence.[6]

The ALJ issued a decision finding Plaintiff not disabled.[7] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent

---

[4] AR 49–65; AR 712 (listing daughter as 26-years-old in 2023).

[5] AR 67–68.

[6] AR 289–91, 296.

[7] AR 14–37. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

with the medical evidence and other evidence."[8] The ALJ considered the statements from Plaintiff's husband, son, daughter, and daughter-in-law.[9] As to the medical opinions, the ALJ found each of the medical opinions "generally persuasive."[10] As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since July 1, 2020, the alleged onset date, through her date last insured of December 31, 2025.
- Step two: Plaintiff had the medically determinable severe impairments of degenerative disc disease, COPD, thyroid disorder, hyperlipidemia, obesity, essential hypertension, cardiac dysrhythmias, GERD, obstructive sleep apnea,

---

[8] AR 23. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

[9] AR 29.

[10] AR 28–29.

depressive disorder, anxiety disorder, diabetes mellitus, and status post fracture of left ankle and ORIF surgery.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform light work except:

  the individual can frequently climb ramps and stairs, but occasionally climb ladders, ropes, and scaffolds. The individual can frequently stoop, crouch, and crawl. The individual can tolerate occasional exposure to extreme environmental heat and cold, and to loud noise as defined in Selected Characteristics of Occupations. The individual and [sic] tolerate occasional exposure to atmospheric conditions as defined in Selected Characteristics of Occupations. The individual can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving machinery. The individual can perform simple and moderately complex tasks consistent with a reasoning level of 4 or less. The individual can tolerate occasional changes to work routines and work processes. The individual requires regular work breaks at 2-hour intervals.

- Step four: Plaintiff is unable to perform past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant

numbers in the national economy, such as cleaner, housekeeping, deliverer, and router.[11]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[12] Plaintiff now appeals to district court.[13]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[14] The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[15] and such error impacted the

---

[11] AR 17–31.

[12] AR 1–6.

[13] ECF No. 1.

[14] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[15] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

nondisability determination.[16] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[17]

## III. Analysis

Plaintiff argues the ALJ erred by failing to fully incorporate the consultative psychological examiner's opinion into the RFC and by

---

[16] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error).

[17] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

improperly rejecting Plaintiff's symptom testimony. In response, the Commissioner argues no error occurred and that the ALJ's decision is supported by substantial evidence. As is explained below, substantial evidence supports the ALJ's RFC and evaluation of Plaintiff's reported symptoms.

**A. Medical Opinion and RFC: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ erred by failing to include into the RFC the opinion from Joyce Austin, PMHNP, that Plaintiff was unable to deal with the normal pressures of a competitive work situation. In response, the Commissioner maintains that the ALJ reasonably incorporated into the RFC NP Austin's tentative opinion about Plaintiff's possible difficulties dealing with work pressures. Substantial evidence supports the crafted RFC.

1. <u>NP Austin's evaluation and opinion</u>

In January 2024, NP Austin conducted a psychiatric evaluation of Plaintiff.[18] During the evaluation, Plaintiff shared about her financial, family, and health stressors and that she experiences panic attacks,

---

[18] AR 1029–37.

racing thoughts, and tingling in her lower legs when her heart races.[19] She reported she was independent with her hygiene, transportation, finances, and appointments; she performed some chores, including cooking dinner with her daughter's help; she shopped twice a week; and she could read for hours, watch TV for about an hour, and focus on the computer for about 30 minutes.[20] She appeared alert and orientated, was dressed appropriately and groomed, was cooperative with good eye contact, had tangential/rapid speech, had full range of motion of her extremities, was tearful then friendly in her affect, had a sad and sometimes elevated mood, had normal attention and immediate recall, got 2/3 correct on delayed recall, performed the 6-digit forward-span incorrectly but the 5-digit and 4-digit backward-spans correctly, had normal fund of knowledge and abstract thinking, performed the concentration tests correctly, and had poor insight into her condition.[21]

---

[19] AR 1029–30.

[20] AR 1034.

[21] AR 1032–34.

Based on her observations, review of listed records, Plaintiff's self-reports, and testing, NP Austin diagnosed Plaintiff with unspecified disorder and unspecified anxiety disorder, finding her prognosis good with psychotherapy and medications over the next twelve months.[22] NP Austin opined that Plaintiff's financial stressors and health problems increase her anxiety and depressive symptoms and that Plaintiff:

- could perform simple and complex tasks;
- could sustain concentration and persist in work-related activity;
- could maintain effective social interaction with supervisors, co-workers, and the public; and
- "may be challenged to deal with normal pressures in a comparative situation because her anxiety is not being controlled [and] could benefit from psychotherapy in combination with medication."[23]

---

[22] AR 1036.

[23] AR 1036.

2. Standard

The ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[24] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[25] Supportability and consistency are the most important factors.[26] When considering the ALJ's findings as to medical opinions, the Court is constrained to the reasons and supporting explanation

---

[24] 20 C.F.R. § 404.1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[25] 20 C.F.R. § 404.1520c(c)(1)–(5).

[26] *Id.* § 404.1520c(b)(2).

offered by the ALJ.[27] Further, an ALJ must incorporate "clinical findings into a succinct RFC."[28]

3. The ALJ's findings

The ALJ found NP Austin's medical opinion "generally persuasive" because it "is supported by her own examination of the claimant" and "consistent with the other objective evidence found in the record . . . [which showed] no unusual anxiety or evidence of depression, and normal mood, thought content, and judgement."[29] Likewise, the ALJ found the state agency consultants' psychological opinions generally persuasive, and concluded: "Accordingly, the residual functional capacity in this decision appropriately limits the claimant to . . . simple and moderately complex tasks consistent with a reasoning level of 4 or less; occasional changes to work routines and

---

[27] *See Burrell*, 775 F.3d at 1138.

[28] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005–06 (9th Cir. 2015). *See also* Social Sec. Rlg. (SSR) 96-8p: Policy Interpretation Ruling Titles II and XVI: Assessing RFC in Initial Claims.

[29] AR 27.

work processes; and requires regular work breaks at 2-hour intervals."[30]

4. Analysis

Contrary to Plaintiff's contention, the RFC adequately incorporates NP Austin's opinion about Plaintiff's possible limited ability to handle workplace stress. [31] It was reasonable for the ALJ to translate NP Austin's opinion that Plaintiff "may be challenged to deal with normal pressures in a competitive situation"[32] by limiting Plaintiff to occasional work-routine and work-process changes.[33] Moreover, this

---

[30] AR 29.

[31] *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1271, 1223 (9th Cir. 2010) (recognizing that while the RFC must be consistent with an evidentiarily supported opined limitation, it need not be identical to the opined limitation).

[32] AR 1036.

[33] *See Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (recognizing that it is ALJ's role to translate the opined limitations into the RFC).

RFC limitation is more restrictive than the state agency psychological consultants' opinions that Plaintiff "will have occasional difficulties with adapting to change, but will be able to adapt to normal, routine changes in a competitive workplace within normal tolerances"[34] as it restricts Plaintiff to occasional changes to work routines *and* work processes.

Plaintiff fails to establish that the ALJ failed to incorporate NP Austin's opinion into the RFC.

**B. Symptom Reports: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons to reject her testimony that she is unable to work due to her combination of severe anxiety including panic attacks, urinary and fecal incontinency, metabolic disorders, shortness of breath, and pain resulting from her neck, shoulder, lumbar, hip, and groin impairments. In response, the Commissioner argues that substantial evidence supports the ALJ's evaluation of Plaintiff's symptom testimony. As is discussed below,

---

[34] AR 92, 105.

substantial evidence supports the ALJ's clear and convincing reasons for discounting Plaintiff's reported symptoms.

1. Standard

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[35] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) objective medical evidence; (2) daily activities; (3) the location, duration, frequency, and intensity of pain or other symptoms; (4) factors that precipitate and aggravate the symptoms; (5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and (7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[36]

---

[35] 20 C.F.R. § 404.1529(c).

[36] *Id.* § 404.1529(c)(2), (3)).

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[37] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[38]

2. <u>The ALJ's findings and analysis thereof</u>

The ALJ found "there are inconsistencies and other facts present in the evidence that undermine the persuasiveness of the claimant's subjective symptom reports and complaints."[39] The ALJ discussed that (1) Plaintiff's treatment was generally conservative, and not progressive, other than her surgeries related to her April 2024 ankle injury; (2) the physical/psychiatric examinations support a greater level

---

[37] *Smartt*, 53 F.4th at 499; 20 C.F.R. § 404.1529(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); SSR 16-3p.

[38] *Smartt*, 53 F.4th at 499 (alteration added).

[39] AR 26.

of function than Plaintiff alleged; and (3) Plaintiff's statements of disability were inconsistent with her reported activities of daily living.

*a. <u>Conservative, non-progressive treatment</u>*

A claimant's course of treatment, including improvement with treatment, is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[40] Context is crucial when interpreting medical records as "treatment records must be viewed in light of the overall diagnostic record."[41]

Here, the ALJ found that other than the treatment that Plaintiff received for her left ankle injury in 2024, her treatment for her other conditions was conservative and did not progress in intensity.[42] To challenge this finding, the Plaintiff highlights that she received a

---

[40] 20 C.F.R. § 404.1529(c)(3). *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (considering evidence of improvement).

[41] *Ghanim*, 763 F.3d at 1164.

[42] AR 26.

lumbar epidural steroid injection and took psychiatric medications, which she argues are not conservative treatment.

Plaintiff is correct that the Ninth Circuit noted in *Garrison v. Colvin* that it doubted whether "epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."[43] But this record varies significantly from *Garrison*. In *Garrison*, the claimant received more than one epidural shot for her neck and back pain, with the shots not providing neck-pain relief and only brief back-pain relief.[44] Moreover, the pain pills prescribed and taken by the claimant in *Garrison* caused intense sleepiness and drowsiness and only provided limited periods of relief from near constant pain, even considering the epidural shots and physical therapy.[45] Nor is this case similar to *Drawn v. Berryhill*, another case relied on by Plaintiff,

---

[43] 759 F.3d at 1015 n.20.

[44] 759 F.3d at 1015.

[45] 759 F.3d at 1015.

wherein the claimant continued to hear voices even after she was prescribed a number of psychiatric medications.[46]

Here, Plaintiff received a steroid shot in her right lower back in February 2021.[47] Although relief was not immediate, subsequent medical records typically note normal gait and range of motion, and Plaintiff did not receive another steroid shot nor does the record reflect the continued use of prescribed pain medications.[48] For instance, at a December 2021 neurology appointment, Plaintiff was observed with painless full range of motion of the head and neck, with no decreased range of motion, instability, atrophy, or abnormal strength or tone in the neck, spine, ribs, or pelvis.[49] At pulmonary testing that same month, Plaintiff walked at a fast pace with no stopping during the 6-minute walking test; she was assessed with very mild obstructive expiratory impairment with bronchial hyperresponsiveness and very

---

[46] 728 F. App'x 637, 642 (9th Cir. March 22, 2018) (unpublished opinion).

[47] AR 853, 431.

[48] *See* AR 853–54, 1449–51.

[49] AR 679.

mild reduction in single breath diffusing capacity.[50] Then in August 2022, at a cardiology appointment, she was observed with a normal gait and with no musculoskeletal abnormalities and it was noted that her blood pressure was well controlled, a new medication was prescribed to reduce reported episodes of palpitations at night, and she was encouraged to get a CPAP and use it.[51] Later that month and several times thereafter, she reported to treating providers that walking and hiking were a leisure activity.[52]

In March 2023, she was observed sitting comfortably with normal range of movement of all extremities and with a normal gait.[53] In May 2023, she reported that with her back issues she could not do intense activity but could walk 3 miles a day, including hiking 6 hours the day before although she experienced some leg swelling after the hike.[54]

---

[50] AR 724.

[51] AR 719–20.

[52] AR 632, 714, 783.

[53] AR 493.

[54] AR 783.

During an August 2023 appointment for mild urge-related incontinence and nocturnal enuresis, she reported that her bladder sensation had improved, she continued with timed voiding during the day, and "conservative options including Kegel exercises" were discussed, along with pelvic floor physical therapy, which Plaintiff elected to delay until she completed possible physical therapy for her back.[55]

In October 2023, Plaintiff reported both knee and shoulder pain and was observed with knee pain and limited ability to bend her knees and pain at the right anterior proximal bicep tendon insertion; the subsequent imaging of her knees was normal and she was given home exercises for her shoulder.[56] Also, in October 2023, Plaintiff sought treatment for situational anxiety related to her mom's illness and her anxiety to fly to Germany to visit her mom; the provider observed Plaintiff as "very anxious" and encouraged her to participate in

---

[55] AR 1111.

[56] AR 939–40, 965.

behavioral health counseling along with prescribing sertraline for anxiety and hydroxyzine for sleep.[57]

In November 2023, when seeking treatment for acute severe abdominal cramping pain, it was noted that she "had reassuring exam," was not taking any medication for an abdominal condition, and was to focus on high water intake and a bland diet.[58] At an appointment a week later for ear pain, it was noted that she was getting ready to fly to Germany and she was observed with normal behavior.[59] Plaintiff did not appear anxious at the several treatment appointments in January 2024, but during her psychiatric evaluation that month, she did appear with tangential, rapid speech and labile affect, and the evaluator determined her anxiety was not well-controlled.[60]

---

[57] AR 941–43.

[58] AR 954–55.

[59] AR 958–59.

[60] AR 977, 991–92, 994–95, 1029–36, 1436.

Also, in January 2024, during a follow-up appointment for her shortness of breath, she reported that she was "doing fairly well but continues with shortness of breath/dyspnea on exertion," that she "typically likes to hike and search for rocks but has unfortunately been rather short of breath," and that she was able to perform her activities of daily living without significant difficulty.[61] During this appointment, she was observed with normal gait and station and with mild obstructive airflow pattern on pulmonary function testing and a new inhaler was prescribed.[62] It was noted that "[c]ardiac work up has been rather extensive and so far without significant abnormality."[63]

In February 2024, she advised treating providers that she walks regularly and she was encouraged to follow-up with sleep specialists as to medicine, CPAP options, or desensitization.[64] It was noted that she "[w]as stressed about her German mother's health so started

---

[61] AR 976–77.

[62] *Id.*

[63] AR 977.

[64] AR 1000–05, 1008–12.

sertraline, doing better."[65] Plaintiff similarly reported months later: "Sertraline has been effective in managing her anxiety, which she believes helps to lower her [blood pressure]."[66]

In April 2024, Plaintiff fractured her left ankle when climbing over a log during a hike.[67] Surgeries were recommended to repair her ankle and during an August 2024 follow-up appointment for her left ankle, it was noted that "[s]he has full dorsiflexion and plantarflexion of the left ankle. The incision is well-healed without signs of infection. Her strength is intact. There is no pain with palpation over the lateral ankle."[68] It was recommended that she continue formal physical therapy until discharged and that she return if problems develop.[69]

At an August 2024 appointment, Plaintiff presented with "new complaint of fecal incontinence," and it was noted that her colonoscopy

---

[65] AR 1059.

[66] AR 1335.

[67] AR 1249, 1462.

[68] AR 1506.

[69] *Id.*

evaluation in 2020 was unremarkable and that the "most likely etiology is weak pelvic floor muscles vs incompetent renal sphincter vs overflow constipation vs IBS."[70] She was observed with normal breath sounds, pulmonary effect, musculoskeletal range of motion, mood, and affect.[71] It was recommended that she engage in Kegel exercise, modify her diet, consider biofeedback therapy, and start medication for possible IBS-D.[72]

During a November 2024 follow-up appointment for her left ankle injury, after completing physical therapy,[73] Plaintiff had no pain or abnormality in her left ankle other than a small area of swelling, and

---

[70] AR 1284–85.

[71] AR 1284.

[72] AR 1286.

[73] AR 1503–46 (physical therapy notes, including one that states, "Pt is making slow, steady gains with regards to ROM and strength," although she struggled with left ankle pain with prolonged walking/standing as she reported that she did a lot of walking the past weekend in Seattle, AR 1513).

she was observed walking fully weightbearing and pain free.[74] She was encouraged to continue with the home exercise program.[75]

On this record, substantial evidence supports the ALJ's decision to discount the severity of Plaintiff's reported physical and anxiety-related symptoms notwithstanding the single spinal epidural shot that Plaintiff received for her back pain, the prescribed medication for anxiety and sleep, and the surgeries and pain medication for her acute ankle fracture in 2024.[76] As the ALJ stated, given the severity of Plaintiff's allegations about her difficulties walking, standing, sitting, breathing, with voiding, and with anxiety, "one would expect to see

---

[74] AR 1477–78.

[75] *Id.*

[76] *Accord Smartt v. Kijikazi*, 53 F.4th 489, 500 (9th Cir. 2022) (determining that other than the initial stabilization surgery for a cervical spine injury, the claimant's physical therapy, use of a neck brace and wheelchair, and ongoing pain medication was reasonably considered ongoing conservative treatment).

more progressive treatment options."[77] The treatment record reveals that, although Plaintiff regularly sought treatment for her various conditions, her overall treatment for these conditions, absent the acute ankle injury, was largely conservative and did not progress. For instance, she did not receive additional epidural shots; her prescribed level of sertraline remained largely steady at 50 mg; she did not have pain medication routinely prescribed; she did not have non-ankle surgeries; and she did not engage in routine behavioral health counseling. Instead, along with the prescribed sertraline and sleep medication, the following were recommended: imaging or other diagnostic services, physical therapy or home exercises, dietary changes, and the use of a CPAP machine.

On this record, substantial evidence supports the ALJ's specific, clear, and convincing finding that Plaintiff's reported disabling physical and mental symptoms were inconsistent with the non-progressive recommended treatment. Moreover, even if the single epidural shot and the prescribed sertraline and sleep medication were

---

[77] AR 26.

not conservative treatment, substantial evidence supports the ALJ's finding about the lack of progressive treatment. The back surgery that was discussed if conservative measures failed was not pursued by Plaintiff.[78] And the treatment records show that the left-ankle surgeries and subsequent physical therapy allowed Plaintiff to improve following her ankle fracture.[79]

*b.* *Objective medical evidence*

Objective medical evidence—signs, laboratory findings, or both—is a relevant factor for the ALJ to consider when assessing a claimant's symptoms.[80] While an ALJ may not "reject a claimant's subjective

---

[78] AR 1451 ("I do not see severe stenosis, but her symptoms may be the result of chemical radiculitis. I have recommended physical therapy and right L4 5 injections, which may also serve a diagnostic purpose. We will see her back after the injection. She may benefit from L4-5 decompression and fusion.").

[79] *See, e.g.*, AR 1503–48, 1475–78.

[80] 20 C.F.R. § 404.1502(f), (g); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2026).

complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints.[81] Further, an ALJ may consider discrepancies between a claimant's reported symptoms during the administrative process with the claimant's reports to treatment providers and the observations of the providers.[82]

As to Plaintiff's physical examinations, the ALJ commented that absent obesity:

> physical examinations often revealed the claimant appeared alert, appropriate, well-appearing, well-nourished, not ill-appearing, and in no acute distress; neck was normal with no abnormalities; cardiovascular system and pulmonary

---

[81] *Smartt*, 53 F.4th at 498 (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

[82] 20 C.F.R. § 404.1529(c)(4). *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms).

> system were normal; neck was supple with normal range of motion; musculoskeletal system exhibited normal range of motion; extremities exhibited no abnormalities or obvious deformities; gait was normal; and coordination and cranial nerves were intact.[83]

As to Plaintiff's psychiatric examinations, the ALJ noted that Plaintiff "consistently showed no unusual anxiety or evidence of depression, and normal mood, thought content, and judgment."[84]

Plaintiff argues that the ALJ cherry-picked medical records and failed to address her chronic pain, degenerative disc disease, ankle injury, groin pain, panic attacks, and anxiety; and that the ALJ failed to mention the lumbar spine MRI from 2020. The Commissioner responds that the ALJ did reference Plaintiff's status post left ankle fracture and surgery, discussed imaging findings and reports of pain, and acknowledged her history of panic attacks, including the one that prevented completion of an MRI, but that after considering all the evidence—both in favor of Plaintiff's claim of disability and those inconsistent with Plaintiff's claim—the ALJ reasonably found

---

[83] AR 26.

[84] AR 26–27.

Plaintiff's claim inconsistent with the overall objective medical evidence.

As the ALJ discussed, and as reflected in the summary of the medical records above, the objective findings in the overall medical record are inconsistent with the severity of Plaintiff's claims. As revealed in the December 2020 imaging, Plaintiff did have a disc bulge at the L4-5, which may have impacted her right L5 nerve root along with mild bilateral foraminal narrowing. The ALJ addressed Plaintiff's degenerative disc disease, finding it to be a severe impairment, and crafted an RFC that limited Plaintiff to light work with restricted posturals. The cited records support the ALJ's reliance on normal range of motion of the neck and musculoskeletal system, no abnormalities or deformities in extremities, and normal gait, along with routinely normal cardiovascular and pulmonary findings.[85]

---

[85] AR 26 (citing, *e.g.*, AR 416 (Nov. 2020: steady gait and moving extremities well with normal range of movement with no pain noted); AR 650 (Jan. 2022: tenderness with palpation to the rib cage, normal musculature and extremities, and normal respiratory effort and heart

Moreover, other treatment records support the ALJ's finding and reflect that the ALJ did not cherry pick normal findings, as the treatment record often indicated pain free range of motion[86]:

---

rhythm); AR 473 (Aug. 2022: steady gait); AR 488 (March 2023: mild tenderness in abdomen with no guarding or masses and with normal bowel sounds); AR 495 (April 2023: sitting comfortably and normal gait and breathing); AR 786 (May 2023: no joint deformity, trace pitting edema present, no wheezing, non-tender abdomen, no proximal muscle weakness); AR 781 (Aug. 2023: no deformity of extremities); AR 845 (Oct. 2023: full range of motion of extremities with lower lateral lower rib tenderness); AR 995 (Jan. 2024: no distension of abdomen and normal range of musculoskeletal motion); AR 1079 (March 2024: no deformity of extremities and no wheezing); AR 1285 (Aug. 2024: normal bowel sounds with soft abdomen, normal range of musculoskeletal motion)).

[86] *Cf. Ortiz v. Bisignano*, 179 F.4th 691, 699 (9th Cir. 2026) ("Normal results of strength, gait, and range of motion tests, without more, do not contradict diagnoses based on pain where *the results do not*

- Jan. 2021: pain with lumbar range of motion, but active pain free range of motion of cervical area, hip, upper extremities, knee, and ankles.[87]
- June 2021: normal gait with normal cervical spine and upper extremities.[88]
- April 2021: active pain free range of motion in her right hip with normal gait and strength.[89]
- September 2023: movements are pain free and gait is normal.[90]
- January 2024: active pain free range of motion of her shoulder.[91]

---

*indicate whether the test accounted for the relevant pain*.") (emphasis added).

[87] AR 1452–53.

[88] AR 1439.

[89] AR 1446.

[90] AR 503.

[91] AR 1436.

The ALJ's decision reflects that he considered the evidence as a whole and provided a summary of his relevant findings and cited supporting evidence. The ALJ's finding that the physical examinations support a greater level of function than alleged by Plaintiff is a clear and convincing reason supported by substantial evidence to discount Plaintiff's reported physical symptoms.

Substantial evidence also supports the ALJ's finding that the psychiatric observations in the record were generally normal during treatment appointments.[92] Although reliance on Plaintiff's observed psychiatric status during physical-health appointments may not always provide substantial evidence to support an ALJ's finding that

---

[92] AR 27 (citing AR 459–60 (Dec. 2021: alert, normal mood, behavior, thought content, and judgment); AR 650 (Jan. 2022: normal mood and affect but also anxious); AR 495 (April 2023: appropriate mood and affect); AR 995 (Jan. 2024: normal mood and thought content); AR 1079, 1129 (March and Nov. 2024: "no unusual anxiety or evidence of depression"); AR 1285 (Aug. 2024: normal mood, thought content, and judgment)).

the claimant's mental health was generally well treated, on this record substantial evidence supports the ALJ's finding. The medical record reflects that Plaintiff's anxiety arose during periods of familial or personal-health stressors and that Plaintiff reported that the prescribed sertraline helped manage her anxiety.[93]

---

[93] *See, e.g.*, AR 659 (June 2020: appearing as anxious during appointment for abdominal pain and bowel habits); AR 756–58 (Oct. 2020: anxious appearing and appearing as hypertensive; reporting "significant home stressors caring for her daughter who has a seizure disorder"); AR 417 (Nov. 2020: "start her on duloxetine 30 mg . . . I am hopeful this will not only help her pain but help her anxiety about her health. She also takes care of a daughter with special needs and has a lot of stress and this may be beneficial for that as well."); AR 718 (Aug. 2022: "She has been under a lot more stress lately as her mother had contacted her from Germany and her mother is having worsening in her health . . . ."); AR 944 (Oct. 2023: appearing as fatigued with tearful mood; relating that her daughter is doing better but they are

*c. <u>Activities of daily living</u>*

The ALJ may discount a claimant's reported disabling symptoms if she can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms or involving the performing of work-related functions.[94] The ALJ should not penalize the claimant for attempting to engage in normal life activities.[95] "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may

---

struggling financially and her mother is in poor health and Plaintiff reports "she has a lot of stress and memories in Germany").

[94] *Molina*, 674 F.3d at 1113.

[95] *Garrison*, 759 F.3d at 1016. *See also Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (recognizing that the fact the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period").

not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."[96]

Here, the ALJ highlighted that Plaintiff cared for her personal hygiene, dusted, did laundry, operated a motor vehicle, prepared meals, shopped for groceries, used a computer, managed her finances, interacted with others, walked 3 miles a day, completed a 6-hour hiking trip, and traveled to Germany.[97] The ALJ found these activities inconsistent with Plaintiff's disability allegations.[98]

Substantial evidence supports this finding. Plaintiff's testimony about her limited ability to stand and walk was inconsistent with her statements to treating providers about her walking and hiking long distances.[99] Similarly, her testified to difficulties with driving, bending her knees, and washing dishes are inconsistent with her activities of

---

[96] *Smolen*, 80 F.3d at 1287 n.7.

[97] AR 27.

[98] *Id.*

[99] AR 437, 439, 632, 715, 729, 766, 778, 944, 1002, 1259.

hiking, hunting for rocks, and climbing over logs.[100] In addition, when traveling internationally to Germany, Plaintiff sat for long periods and walked as necessary.[101] Plaintiff reported undertaking these demanding exertional activities at different times during the relevant period and never contemporaneously complained of disabling effects to the treating providers, further underscoring the ALJ's credibility assessment. Based on these activities along with Plaintiff's daily living activities, the ALJ reasonably found that Plaintiff's reported symptoms were inconsistent with her activity level.

## IV. Conclusion

Plaintiff fails to establish that the ALJ consequentially erred. The ALJ's nondisability findings are supported by explanation and substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **AFFIRMED**.

---

[100] AR 778, 944, 976, 1249, 1336, 1360.

[101] AR 906 (Nov. 2023: traveling to Germany in the next week); AR 959 (Dec. 2023: discusses return from Germany).

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 12**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 23rd day of September 2026.

EDWARD F. SHEA
Senior United States District Judge